

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | CRIMINAL NO. 1:11-MJ-793 |
| | ) | |
| ABDULKADIR MOHAMED NUNOW | ) | |
| | ) | |
| Defendant. | ) | |

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Raymond Abruzzese, being duly sworn, depose, and state as follows:

### I. INTRODUCTION

1. I am a Special Agent with the Department of Homeland Security, Homeland Security Investigations (HSI) assigned to the Washington D.C. Field Office in Sterling, Virginia. I have been a Special Agent for Homeland Security Investigations/Immigration and Customs Enforcement for approximately eight years. I am assigned to the Washington, DC District Office, Office of Investigations, in Sterling, Virginia. My duties as a Special Agent include investigating violations of U.S. Immigration and Customs laws, including Titles 8, 18 and 19 of the United States Code. I successfully completed the Criminal Investigator Training Program and the Immigration and Customs Enforcement Agent Training Program at the Federal Law Enforcement Training Center in Glynn County, Georgia.

2. This affidavit is filed in support of an arrest warrant and criminal complaint charging Abdulkadir Mohamed Nunow with using fraud to procure or misuse visas, permits and other documents, in violation of Title 18, United States Code, Section 1546.

1

3. This affidavit contains information necessary to support a finding of probable cause and is based on my personal observations during the course of this investigation, information conveyed to me by other law enforcement officials and non-law enforcement witnesses, and my review of records, documents, and other physical evidence obtained during this investigation. This affidavit does not include each and every fact observed by me or known by the government.

4. This case originated from information received from an employee of the Broadcasting Board of Governors (BBG) which is located in Washington, DC. BBG is a U.S. Department of State authorized exchange program sponsor. This information received from BBG was in reference to an exchange visitor named Abdulkadir Mohamed Nunow. Nunow was sponsored by BBG to work in its Voice of America Somali Service also located in Washington, DC. The U.S. Department of State highlights the exchange visitor program and exchange visitor sponsor as follows:

A. The Exchange Visitor Program promotes mutual understanding between the people of the United States and the people of other countries by educational and cultural exchanges, under the provisions of U.S. law. Exchange Programs provide an extremely valuable opportunity to experience the U.S. and our way of life, thereby developing lasting and meaningful relationships. At the conclusion of their program, Exchange Visitor program participants are expected to return to their home countries to utilize the experience and skills they have acquired while in the U.S.

B. In carrying out the responsibilities of the Exchange Visitor Program, the Department of State designates public and private entities to act as exchange sponsors. Designated sponsoring organizations facilitate the entry of foreign nationals into the U.S. as exchange visitors to complete objectives of one of the wide variety of exchange visitor program categories.

Individuals participating in the exchange visitor program obtain a J-1 classification visa and are admitted as non-immigrants. Prior to obtaining a J-1 visa potential exchange visitors must obtain a certification of eligibility for exchange visitor status (DS-2019). A DS-2019 is a U.S. Department of State form used by the exchange visitor's sponsor to indicate an individual's eligibility for a J-1 visa. More simply, if a potential exchange visitor meets the criteria for the intended program, he or she can apply with an authorized exchange sponsor and request entry into its program. In this case, Nunow needed to document that he had special production and reporting skills in order to qualify for an exchange program with BBG. Once an individual obtains a DS-2019 from an accredited exchange visitor sponsor, that individual can apply for a J-1 or J-2 Visa. Individuals entering the United States as an exchange visitor are supposed to enter for temporary time period.

5. Additional information provided by BBG revealed that in or about November 2010, Nunow had requested a DS-2019 from BBG in order to obtain a J-2 non-immigrant (dependant of a J-1; wife or child) visa for an individual he identified as his wife, Halima Mohamed, with the date of birth of March 20, 1985. A J-2 visa allows a spouse or child of a J-1 visa holder to enter the United States as a dependant of the J-1 visa holder. This dependant is allowed entry into the United States based upon the approved non-immigrant status of the J-1 visa holder. The DS-2019 that Nunow applied for Mohamed was approved by BBG on December 1, 2010. Nunow had to first obtain the DS-2019 from his exchange visitor sponsor BBG, prior to applying for the actual J-2 Visa from the U.S. Department of State. According to the United States Department of State, it is the exchange visitor's responsibility to apply for and obtain their United States Visa after the DS-2019 has been approved.

3

6. Information obtained from BBG further revealed that Nunow had applied for on the DS-2019 was not actually Mohamed. BBG stated that this individual was actually Nunow's second wife, Khadra Ali Hersi, but Nunow did not list the true name of this individual. BBG explained that Nunow had a conversation with at least two BBG employees where Nunow revealed that the individual that he applied for and obtained a J-2 visa was not Halima Mohamed, but actually his second wife, Khadra Ali Hersi. BBG further disclosed that Nunow explained to these employees that he decided that he wanted to bring his "younger" wife (Hersi) into the United States instead of his "older" wife (Mohamed). BBG also advised your affiant that Nunow had been terminated as an exchange visitor participant due to this action and that Nunow would not be employed with BBG any further.

7. A check of the State Department Consular Consolidated Database (a database maintained by the United States Department of State) revealed that United States Visas were issued by the State Department of the United States to Nunow and also Halima Mohamed. Nunow was issued a J-1 exchange visitor visa on December 29, 2009. Mohamed was issued a J-2 exchange visitor (dependant) on February 2, 2011. Both of these visas were issued at a United States Embassy in Djibouti.

## II. PROBABLE CAUSE

8. On September 7, 2011, Homeland Security Investigations Special Agent Thomas Eyre and your affiant traveled to the last known address for Nunow in Alexandria Virginia which is in the Eastern District of Virginia. Special Agent Eyre and your affiant encountered Nunow after knocking on his apartment door and your affiant fully identified himself and Special Agent Eyre as Special Agents with the Department of Homeland Security. Your affiant further showed Nunow Government issued credentials and displayed a Government issued badge, identifying

4

your affiant as a federal agent. Your affiant asked Nunow for permission to enter the apartment which Nunow provided without hesitation. Your affiant told Nunow he and Special Agent Eyre wanted to interview him. Nunow indicated that he was fine with being interviewed. Special Agent Eyre asked Nunow if he was comfortable communicating in the English language. Nunow stated that he was comfortable and that he had attended English language schools in Somalia. Also present inside of this apartment was an adult female, whom Nunow introduced as Mohamed, but who was in fact Hersi. Your affiant asked Nunow for his identification and for the female's identification. Nunow complied with his request and produced two Somali passports. The first appeared to be issued to Nunow, due to the fact that it was bearing his photograph and biographical information. The other passport appeared to belong to Mohamed; however, it had a picture of Hersi. Also contained in each passport were two United States visas. The first was issued to Nunow and was a J-1 classification visa and the other was issued to Mohamed and was a J-2 classification visa. Your affiant asked Nunow to verbally identify the adult female. Nunow falsely stated that it was his wife, Halima Mohamed, and that her date of birth was March 20, 1985. Your affiant asked Nunow if he had any other wives. Nunow falsely stated that he only had one wife and that it was the adult female in the apartment. Nunow stated to your affiant he personally filed the paper work with the State Department of the United States to obtain the J-2 visa for Mohamed. Nunow further stated that Mohamed used this passport and United States Visa to enter the United States via the Dulles Airport, which is in the Eastern District of Virginia.

9. Your affiant explained to Nunow that it was actually a crime in the United States to make false statements to Federal Law Enforcement Officers and that he and Special Agent Eyre are Federal Law Enforcement Officers. Your affiant again showed Nunow Government

5

issued credentials. Nunow stated that he understood that lying to Federal Agents was a crime and that what he told your affiant and Special Agent Eyre was true. Nunow continued to state that the adult female was Mohamed and that he didn't have any other wives in the United States or in Somalia. After a few more questions posed by Special Agent Eyre, Nunow stated that he wanted to correct some information and start telling the truth. Nunow explained that he in fact had two wives, Mohamed and another wife named Khadra Ali Hersi. Nunow further explained that the adult female in the apartment was actually Hersi and not Mohamed. Nunow explained that he decided that he would rather bring Hersi into the United States instead of Mohamed because she was younger and only had one child as opposed to Mohamed who was older and had three children. Nunow stated that he did not think it was financially reasonable to bring Mohamed into the United States. Nunow explained that he made this decision after he submitted a request for a DS-2019 for Mohamed with BBG. Nunow stated that since the DS-2019 was already approved in the name of Mohamed by BBG (his United States Sponsor) he could not then reapply for Hersi.

10. Your affiant showed Nunow a copy of the J-2 visa application for Mohamed that was obtained from the State Department Consular Consolidated Database. This application was for Mohamed and had Mohamed's biographical information on it. This Visa application bore a picture of Hersi. Nunow acknowledged that he filled out this visa application and that he never intended for Mohamed to use the visa but, rather always intended it for Hersi to use it. Nunow stated that he instructed Hersi to obtain a Somali passport using the name Halima Mohamed and then go to the United States Embassy in Djibouti to obtain the J-2 visa which he had applied for with the U.S. State Department. Nunow further revealed that he really had no intention of returning to Somalia, but rather to reside in the United States indefinitely with Hersi and their

6

Somali child. Nunow stated that he came up with this conspiracy by himself and did not have any assistance.

11.     On September 8, 2011, your affiant conducted record checks via Department of Homeland Security controlled databases for both Nunow and Mohamed. Specifically these checks were run via The Central Index System (CIS), The Arrival and Departure Information System (ADIS), The United States Visitor Immigrant Status Indicator Technology (US VISIT). The purpose of these checks were to obtain entry and departure information along with any immigration history for either Nunow, Mohamed or Hersi. According to these database checks, Nunow entered the United States on January 13, 2010 using the Somali Passport P00004*** via New York, NY, John F Kennedy Airport. ADIS indicated that an individual named Halima Ali MOHAMED entered the United States as a non-immigrant J-2 dependant via the Dulles, Virginia Port of Entry on February 16, 2011. A picture of this individual was captured in the United States Visitor Immigrant Status Indicator Technology (US VISIT) upon entry at Dulles, Virginia. Special Agent Abruzzese reviewed this picture and it closely resembles Hersi.

12. On September 6, 2011, your affiant obtained the visa application for Halima Mohamed from the Department of State website in the Consular Consolidated Database (CCDI). This application states that the preparer is Abdulkadir Nunow, and indicates a street address of Seminary Road, Alexandria Virginia. The application further indicates that the application IP address came from 69.143.207.234, an IP address within Alexandria, Virginia, which is within the Eastern District of Virginia.

13.     On September 8, 2011, your affiant received additional information from BBG. This information included an e-mail that was sent from Nunow to a BBG employee on November 29, 2010. This e-mail informed the recipient that Nunow had submitted the

information for his wife Halima Mohamed. The information that he was referring to was in reference to the DS-2019 application that he was trying to obtain for his "wife." The e-mail included an attachment with copies of a Somali passport with Mohamed's information (P000698***). This was the same passport that Nunow provided to your affiant on September 7, 2011.

### III. CONCLUSION

14. Based on the above-described facts, I respectfully submit that there is probable cause to believe that, in or about November 2010 and December 2010, within the Eastern District of Virginia, Abdulkadir Nunow submitted a United States Visa application to the State Department of the United States with information that he knew to be false and untrue, to include the name and date of birth of Halima Mohamed with the photograph of Khadra Ali Hersi, in violation of 18 United States Code, Section 1546.

Raymond Abruzzese
Special Agent
U. S. Department of Homeland Security
Homeland Security Investigations

Sworn to and subscribed before me on this, 26 day of September 2011.

_____/s/_____
Ivan D. Davis
United States Magistrate Judge